Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 1st Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-8-2-0-8-5, People v. Anthony Gavin. Okay, I am Justice Walker and I have here with me Justice Hyman and Justice Pierce, and I have the lawyers, so please introduce yourselves. Good afternoon, Your Honors. Counsel, my name is Chris Bendick from the Office of the State Appellate Defender, and I represent the appellant, Anthony Gavin. Thank you, Mr. Bendick. Good afternoon, Your Honors. I am Assistant State's Attorney, Veronica Kildrell-Malabia, and I represent the people of the State of Illinois in this case. Okay, thank you, Ms. Malabia. And we'll start with you, Mr. Bendick. How much time do you think you need today? Approximately 15 minutes for the opening argument, a few minutes in rebuttal, if necessary. Sure, we'll allow you up to five. We give each side 20 minutes. And Ms. Malabia, how much time do you need today? Only around 15 minutes, Your Honor. Okay, sure, that's fine. And if you find that you're out of time because we're asking questions and you have some points that you really need to get across to us, just let us know that and we'll give you a minute or so to sum up or give us those points that you may have missed. Because we do sometimes have lots of questions, so it takes up your time. So with that, I'll ask you, Mr. Bendick, if you could go ahead and get started, please. May it please the Court. Good afternoon, Your Honor's Counsel. My name is Chris Bendick from the Office of the State Appellate Defender, and I represent Anthony Gavin, the appellant. My intention is to address both arguments in the briefs, starting with the motion for new trial. In trial counsel Denise Streff's opening statement, she promised Judge Tucker, quote, the evidence will also show that Anthony Gavin was not there. He did not commit this crime. He could not have committed this crime. And if you listen to all the witnesses, especially Mr. Melvin Holmes, again, on whose lawn this happened. The theory of defense that Gavin did not shoot Eugene Winters remained the same throughout the trial, yet Streff failed to deploy the most powerful weapon to accomplish that strategy. Holmes' non-identification of Gavin and his testimony that Gavin was not the shooter. Counsel that he did not identify him as the shooter on cross examination. I mean, I'm sorry, on direct examination, correct? He did not identify him direct. And your position is that counsel should have asked him on cross whether or not he saw that. Is that correct? Or whether or not he previously identified him? That's what your argument is, correct? The position is either under cross examination or calling Holmes as his own witness in the defense case in chief. But counsel, I'm sure you've seen so many times where young attorneys decide that just because they want to ask a question or just because they want to go through their list of questions. They'll ask a question that hasn't been answered. And sometimes it's best to just save that for closing arguments. And that isn't that a decent strategy for a lawyer? I know I've used it where someone said something and you just want to jump in, but just save it for closing. And so is that a reasonable strategy on the part of counsel? So normally the decision of what witnesses to call or what questions to ask them is normally a matter of trial strategy, Your Honor. However, those same decisions may require a new trial when they result in counsel's failure to present exculpatory evidence of which she is aware, including the failure to elicit testimony that would support an otherwise uncorroborated defense. But this is a situation where Mr. Holmes is not the sole witness. There were other witnesses here. So if Mr. Holmes had been the sole witness and the state had relied on Mr. Holmes' testimony to prove every part of this case, that would also be a different case. Don't you agree? I would agree that there's more witnesses in this case. However, what we have is Mr. Holmes is the only eyewitness who is not connected to any party here. And so we have this independent witness who can get up on the stand and say one of two things, like he did at the 2017 hearing. He did not identify Gavin as the shooter when given the chance shortly after the shooting. And two, that Gavin was not the shooter. Why does it matter whether he was an independent, as you call it, witness or not? That takes it out of the strategic realm? No, that just goes to the weight and how powerful and how effective Mr. Holmes' testimony would have been at trial had it occurred. We don't know that. We don't know. We don't know what he might have said, do we? I don't agree. At the time, his counsel said she wasn't sure what he might say at trial. Correct? That's what she said. That's not accurate, though, Your Honor. Streff was consistent in saying that, one, Holmes was entirely consistent the entire time pre-trial from September 21st, 2006, all the way through trial, that he did not identify Holmes, that it was a non-identification as the shooter. And further, he was also consistent with the police documents on this issue. Additionally, Streff and her investigator... Police documents? You mean the Maywood police officer Pesnik's recollection? That and police reports. That's what Streff testified at the 2017 hearing, that her interactions with Holmes pre-trial with the investigator was consistent with what he had told Pesnik as well. So the entire time pre-trial, we know that Holmes is not going to identify Gavin as the shooter. And we have him on paper as that, too. That would have been admissible as a non-identification evidence. And again, she promised this testimony in opening statements. And this is the most powerful weapon she has against the state here, is to present the one guy who saw the shooter twice and was going to say, that's not the shooter. Anthony Gavin is not the shooter. Is that your contention, that it's more powerful to argue that on cross-examination, I took the risk of asking this man whether he could identify my client or arguing the only eyewitness to the event did not put my client on the scene as the shooter? Don't you think the trier of fact appreciated that? No, Your Honor, because there was no evidence that Gavin was not the shooter, or there was no identification by Holmes during the evidence that was presented by the state on direct examination. So while counsel can argue- Who identified him as a shooter? Who identified Gavin as a shooter? There were several witnesses that Edwards, according to his prior inconsistent statement that was admitted substantively, Henderson gave identification testimony. Much of his testimony this court found was improperly admitted as impeachment evidence. So in regards to, I like the juxtaposition between Holmes' testimony as to the co-defendant here. He was readily able to identify the co-defendant the day after the shooting and during their joint but severed trials. That's why it shows how powerful this exculpatory testimony would have been, had it been enlisted as evidence. So Holmes identified Bowen as the person driving the car from where the shooter twice emerged. However, seeing the car the first time, Holmes testified he did not see the driver before the shooter got into the car and the car drove away the first time. The only time Holmes was able to view the driver was when the car returned driving westbound on Van Buren, which is several houses north of Holmes. And while still focusing his attention on the shooter, who was now approaching Holmes and Winters, Holmes was able to identify Bowen as the driver. And he did this despite this quote, I didn't really pay attention to where the car was going. I was paying attention to the guy that had jumped out of the car and started walking in our direction. So we have this powerful non-identification testimony that Holmes could have testified to, whether it's under a cross-examination or presenting that witness as the defense case in chief. The problem for Streff's unreasonable strategy here, she didn't present any evidence on this. She made the argument in closing argument, but as the trial court and its finding of fact noted, argument's just argument. I'm basing this off of what was from the witness stand. And guess what didn't come from the witness stand? Holmes' non-identification and his testimony that Gavin was not the shooter. Why does it matter? I know that this is not an accountability case. The first degree murder case. But why does it matter whether he was a shooter or not? Well, it identifies the offense. Isn't the class of the offense the same? So count for which he was found guilty of his personal discharge of a firearm, your honor. The state's entire theory was that he was the principal shooter here. And that's it. There was no case theory here that he was just an accountable party. So they didn't go on accountability. They went in. There was only the first degree murder. As the principal. Yes. So this would have entirely rebutted the state's theory of the case that Gavin was the shooter here. I mean, they went so far as to try to to link the firearm evidence, which, of course, the firearm evidence here totally rebuts the state's case. The firearm evidence indicates that it was Bowen that was firing a 32. And the bullets that came from inside of Winters were conclusively not from the nine millimeter linked to Gavin. So two shooters here. I mean, when you look at the both trials. There's one witness that says there was two shooters. That's witness recanted his testimony, of course, and it came through prior inconsistent statements. But I want to turn back to know what about my question. I'm sorry, Your Honor. So it's possible there were two two shooters in the court could find that. Well, I just there was there was one statement. The physical evidence, however, does not corroborate that there was two shooters. There was only wounds from a 32 caliber. That's all they found inside. This court, of course, found that the bullet that was in between the clothing of Winters that was found during the autopsy preparation was from the shooting the day before. I want to turn, though, to stress purported reasoning, because her 2012 reasoning is diametrically opposed to her 2017 reasoning, because in 2012, she states at the hearing that, quote, the court knew that Holmes never identified Gavin and that, quote, we went into that when Mr. Holmes testified. So the court was very well aware that Mr. Holmes never identified Anthony as the offender. But that's not what she testified to in 2017. As you as your honors point out, she's claiming that this was a strategic choice not to cross examine Holmes on this subject or present him as a witness. But there's really there's something wrong with if we accepted she may have changed focus a little bit. Does that make it improper? Well, I'd say that she added a second. You know, at one time, she said one thing. She added something the second time. No, those are diametrically opposed positions, Your Honor. The first time she's saying, no, we did present evidence of this. And then at the 2017 hearing, she had to. I'm not sure. I'm not sure. She said that just to simply say that the court knew it because he didn't testify that Holmes didn't testify that Gavin was the shooter. So she could be basing her fact in the court knew it based on the fact that Holmes never testified to that. And then to come along later, 2005 years later and say that it was trial strategy. Those two things. There's no conflict there. So help me. What's the conflict? Maybe I'm missing it. The conflict is. She can make the argument in closing argument. Hey, this was never identified. But there's no evidence of that, that he made a non-identification. That's the problem here. It was left out there in the ether as to what Holmes did with Gavin. But she had proof that Gavin was not the shooter. And that should have come from Holmes's mouth on the stand. Or at a minimum, say she doesn't want to open up whatever this alleged can of worms is. She had him on paper via Detective Pesdek. She's already calling Detective Pesdek to perfect impeachment. So she's calling him as a witness in the defense case in chief. There is absolutely no strategic reason not to ask Detective Pesdek on September 21st, 2006. Did Combs come in here and did he view a photo array? Okay. Did he identify my client as the shooter in that photo array? No. End of witness. There is no strategic reason. On the other side of that, I've seen this happen. Where the witness then answers that question, yes, he did. And then they say, oh, wait, you testified? Yeah, but I remember it differently now. Something happened that jogged my memory. And people get caught up like that. I've seen it so many times where lawyers got caught up asking a question that wasn't necessary. But it is necessary in this case. Because that was the most powerful testimony that could have been elicited at trial. That Gavin was not the shooter and he was not identified when Mr. Holmes had the chance to view him in a photo array. I think you're missing Justice Walker's point. If the witness changed his mind and said, yes, I did identify him. Yes, she has the police reports and the detective and, you know, available for impeachment of that. But she runs the risk that he now says, yes, I did identify him. Isn't she better off just leaving it as he didn't identify him? He would have identified him if he saw him. But he didn't. There's no identification from this witness. As opposed to running the risk of saying, and my client wasn't there, correct? No, no, he was there. Now you're scrambling. The way, at a minimum, can be done. And there's no reason it should have been not done in this case. Because of Strzok saying he was entirely consistent during all pre-trial investigation. She has him with a prover, an investigator, right? I mean, the state here presented how many witnesses that were prior and consistent statements that came in substantively. The identification, non-identification testimony comes in substantively. If he testifies that way, but you run the risk of him saying, I remember it differently as I sit here today. No, no, Detective Pezdek. It is admissible. Yeah, that's impeachment for substantive purposes. But from the witness's own mouth, if the witness decides at that point in time, he could misunderstand the question. He could be totally confused. He could be out of his mind. But he does run the risk of saying, yes, he was the shooter. That's what I'm saying, Your Honor. At a minimum, there is no reasonable trial strategy not to elicit it from Pezdek when she's already calling Pezdek as a witness. Tisdale and Temple make that clear. A non-identification is substantive evidence. I assure you, if that witness was asked that question and said, yes, he was the shooter. And she went through all the impeachment as substantive evidence that he was not the shooter. Your argument on this appeal would be incompetency or ineffective assistance of counsel because she brought out evidence on cross-examination that wasn't there on direct. She was ineffective. You'd be in the same boat. No, Your Honor. I'm talking about in the case in chief for the defense because Pezdek testified for both the state and the defense. And so when she called Pezdek in the defense case in chief, that would be direct testimony. To say what? What the judge already heard that he did? The judge never heard it from any evidence on that subject. So there was no evidence whatsoever about Holmes viewing a photo array containing Gavin's photo on September 21st and saying, that's not the shooter. I can't identify him. And again, I just juxtapose. I don't want to eat up. I don't want to eat up all your time. Let me ask you, go ahead a little differently. At the hearing, Holmes was asked, did you see the shooter in 2006? You know what he said in response? Not clearly. Everything happened so fast. So really, he didn't see the shooter clearly. So how valuable is this testimony anyway? And I'm glad you bring that up, Your Honor, because I think you need to compare that aside statement that was brought out, you know, after the judge started questioning and trial counsel asked that question. Juxtapose it to his trial testimony, and that's why I walked through all of the information he described as to the shooter and how much he viewed the shooter versus how briefly he only saw the driver and yet was still able to identify Bowen. Again, he's supposedly only seeing Bowen, the driver, from houses away and saying, I'm not focusing on the driver, but he's still able to identify the driver. But it happened so fast, and I didn't really know what was going on. That's just, when you compare it to his trial testimony, I was paying attention to the guy that jumped out of the car and started walking in a direction. Maybe that statement might go to the weight of the testimony at a new trial, Your Honor, but when we compare it to what he said at the trial, as opposed to the 2017 hearing, Holmes had plenty of opportunity to view the shooter here and would have not identified Gavin as the shooter. Mr. Bendick, if you want to get into your constitutional argument, you may want to go ahead and do that regarding the sentencing. If you have any final point that you want to make to the justices regarding your first issue, you can at this time and then move on. Great. I appreciate that, Your Honor. With the state's evidence against Gavin suffering from multiple recantations inconsistencies, the physical evidence does not support that Gavin was a shooter. We believe that we've established that trial counsel did provide deficient performance and Gavin was sufficiently prejudiced that this court should remand the case for a new trial. Now, turning to the sentencing arguments here, the trial court on remand imposed a de facto life sentence upon Gavin. This occurred because of the confluence of our sentencing statutes, mandating consecutive sentencing, and certain instances that apply here. There is no debate that the several convictions resulted in a 47-year total sentence for Gavin, because in Illinois, we consider consecutive sentences to be a singular term. Your Honor, is that the time limit or I'm sorry, something? No, that's just, I apologize for that. When emails come in, sometimes it'll beep like that. We don't have that issue. I understand. Thank you, Your Honor. I apologize. So we consider consecutive sentences to be a singular term. And this court in the Illinois Supreme Court have repeatedly considered the cumulative term of imprisonment for de facto life's purposes. With this court's People v. Rodriguez opinion having been vacated in light of Buffer's de facto line drawing, there is no published case in Illinois addressing whether an aggregate sentence must have occurred as part of a single course of conduct or case. Recently, the Fourth Division and De Corpo left that for another day. However, there is support outside of Illinois that for de facto life purposes, a sentencing court must consider the aggregate sentence the juvenile will receive, whether or not the offenses occurred as part of a single course of conduct. Here we have 40 years, don't we? Because he got credits for those other three offenses. We know what those credits are. They were determined. They was taken off. And so he's at 40 years. He's not over the 40 years. Well, Your Honor, I'm not sure I necessarily agree with that right now because we have a singular term under Latana and even under the Illinois Administrative Code for the Department of Corrections regarding consecutive sentences, which there is no debate. He is serving a consecutive sentence here to the other three. It's viewed as one singular term. But he got credit. Why shouldn't we consider the credit that the DOC awarded him? Until the entire sentence is discharged in Illinois, credit can be revoked. No, not when it's been awarded. It's been awarded here. The credit on his 33 year sentence, if he gets credit, that is still up in the air. But it's been awarded. It has been awarded. He has not been discharged from the Department of Corrections, however. No. He's in prison. So until that sentence is complete. What sentence? He has one sentence, unfortunately. Under Illinois law, he has one sentence. It's the entire consecutive term. What case are you saying that the 33 years makes one sentence just because it's consecutive? That's under Latana and the Illinois Administrative Code 107.130. That's how the Department of Corrections views consecutive sentences. Until you're discharged, there's a singular sentence. Now, he has currently been awarded that good time credit on the other three. But there is no guarantee that that will not be revoked before he is discharged on the entire sentence. The sentences are 33 plus 14? Is that what we have here? It's 33 plus 6 plus 4 plus 4, which makes the 47. And then to answer Justice Hyman's, if he does maintain that credit through his discharge of the sentence, then yes, the line would be 40, Your Honor, to answer that question. So there's no difference in your mind between a actually awarded credit and a not yet awarded? Until the entire sentence is done. There's no difference between those two. Well, as we saw, I think we saw that in Peacock, was that this court was determining whether to use the 40 or the 80. And then the state during Peacock, it was not yet awarded. And that's my point. Thank you. So the point is, in Peacock, it was not yet awarded. Here it was awarded. That's the difference between the two cases. Well, no, in Peacock, it had been awarded, Your Honor. But he had not been discharged from the entire sentence at that point, is my understanding of Peacock. Because he was getting, if you saw the outdate on Peacock, I think it put it under the 40-year line. It was like 39 years and 11 months-ish. Well, paragraph 19 of Peacock, it says that, but it was not yet awarded to the defendant. Your Honor, I'm just basing that off of the outdate that the DOC had already put there for him in that case. Other courts outside of Illinois have considered consecutive sentences, whether they occur in a single course of conduct or not, for de facto-like purposes, to be the aggregate sentence. To be clear, we find that the force and logic of Miller's concerns apply broadly to cases in which a defendant commits multiple offenses during a single criminal episode, to cases in which a defendant commits multiple offenses on different occasions, and to homicide and non-homicide offenses. Mr. Bendik, you're actually out of time, but if you have a final remark you want to make regarding the last question that was asked, you may do so. Yes. Whether this court finds that Gavin has a de facto life sentence, or there was a violation of the Illinois Proportionate Penalties Clause, or that merely the sentence here is excessive, Gavin asked this court to reduce his sentence or, in the alternative, remand the case for a new sentencing hearing. And I reserve the remainder of my time, which is up, I guess, in rebuttal. One second. Okay, thank you. Thank you, Mr. Bendik, and Ms. Malavia, you may proceed. Your Honors, Defense Counsel made a reasonable call to not directly question Holmes or Officer Pezduk about the negative identification and to leave the lack of an identification at trial intact. She was a very experienced criminal defense attorney, and she relied on that experience. We know from defendants' arguments below that Defense Counsel was prepared to question Holmes on the negative identification because she had the police report regarding that negative identification, but she did not pursue that line of questioning. She made that tactical decision because it was a bench trial, and as a trier of fact, the court knew that during direct examination, the state did not ask Holmes about a show-up or a line of identification. But do you think it's proper for her to simply assume what the court knows, what the court remembers? Doesn't a defense attorney have a responsibility to lay their case out during their case-in-chief? And I think that's what Mr. Bendik is really focusing on, not so much that she didn't deal with it during cross-examination, but that she had an opportunity to deal with both witnesses during her case-in-chief, and that didn't happen. I think the way the state's evidence came out during direct examination, it established a strong inference that Holmes did not identify a defendant at the scene of the crime, much less as a shooter. So she did not want to weaken that strong inference by questioning Holmes or Officer Pezdek that could qualify that identification. And that's made evident in the remand testimony. When Holmes testified the remand testimony, he stated he didn't identify a defendant, but he also qualified it. It wasn't exonerating. He qualified it by saying, I didn't see the shooter clearly. So she made the trial strategic decision to rely on the trial effect, which was, of course, a judge who was very experienced, and rely on the fact that the state did not ask Holmes about the show-up or the lineup, nor did the state ask Holmes to identify a defendant in open court. And the absence of this evidence, your honors, would have stood out because the state did ask Holmes about his positive identification of the co-defendant as the driver. And moreover, from the perspective of defense counsel at the time of trial. I have a question with regard to the driver. The driver was Bowen. Yes. Okay. And at the hearing, Holmes was asked, the person who was shooting, did you see him at the murder trial in 2011? Holmes said no. The person who was shooting, do you see him in the courtroom today? Holmes, no. Did you see Anthony Gavin shoot the victim in 2006? Holmes, no. Yes. And he also testified that, explained that he didn't see the shooter clearly. And because it happened. Whether he saw it clearly or not, that is a definitive answer. He didn't qualify the nose. You don't have to see somebody clearly to still say that is the person. Right. He identified, I mean, Bowen has been identified as a shooter. He also, in his remand testimony that you're referring to Justice Hyman, he also stated that he did not identify the driver. And we know that's true that he identified the driver because that was admitted into evidence. He also said they only had a glimpse of the driver and wasn't able to identify him. He did not identify him. The day after, when he went to the police station, he identified Bowen. Yes, he did. But what it shows here is that he was, his testimony, again, it shows his testimony was unpredictable and unreliable, at least his remand testimony. And therefore, the defense counsel's concern that he may deviate from his negative identification was not unreasonable. And from the perspective of defense counsel at the time of trial, her concern that he could depart from his non-identification of defendant was not out of the realm of possibility. Your Honors, there's no question that Holmes did witness the shooting. In discovery, defense counsel learned that there was ample evidence that defendant was the shooter from other eyewitnesses. Denzel Edwards saw defendant with a gun standing over the victim. Cortez Henderson saw defendant shoot the victim. And the victim said, and shot me. And defendant was known as Little Ant. So there was a possibility that once Melvin Holmes got on the stand, he could possibly identify defendant as a shooter, or at the very least, place him with a co-defendant at the scene of the shooting. Also, defense counsel was reasonably concerned that Officer Pesduch may testify to unreported facts about Holmes' identification, like Holmes stating, I didn't really see the shooter. Maybe it's him, I'm not sure. She didn't want to weaken the strong inference that she had going for her. And moreover, questioning of the officer about the negative identification would not have added anything to defendant's bench trial because Holmes' testimony did not place defendant at the scene of the shooting, much less identify him as a shooter. And because there was no evidence that Holmes testified, evidence that Holmes identified defendant, defense counsel, your honors, could and did argue at trial that no witness took the stand and testified that defendant was the shooter. Her decision was a reasonable decision and was not ineffective. Furthermore, defendant cannot show he was prejudiced. Holmes was prejudiced by her failure to ask those questions. The evidence that he was a shooter, your honors, was overwhelming. The victim told his girlfriend that Ant shot me in the face. Again, multiple witnesses testified that defendant's nickname was Little Ant. The victim's identification as defendant as a shooter was corroborated by Cortez Henderson. Henderson identified defendant as a shooter in a photo array and a lineup. He told the police that after the defendant shot the victim, defendant got into the backseat of a blue marquee that was driven away by the co-defendant. This observation was corroborated by Melvin Holmes who testified that the shooter got into the backseat of a blue marquee. Officer Connors testified that while heading to the scene of the shooting, he saw the co-defendant driving a blue marquee away from the scene of the shooting. Defendant was in the backseat where it was in the backseat scooting down trying to hide his face. Your honors, officers, Connors testimony was very, very credible because he knew both defendant and co-defendant. So there was significant corroboration of the victim's outcry that defendant was shot him in the face. And there's also evidence that defendant was accountable for the murder, even if he wasn't the shooter. There's no dispute that there were two offenders. Accountability isn't a question here because it wasn't brought. OK, and then so your honors, defendant has failed to sustain his claim of ineffective assistance of counsel. With respect to the Sunstein issue, defendant does not raise a valid Miller claim under the Eighth Amendment or the proportionate penalties clause. Pursuant to people versus buffer defendants, 33 year sentence for first degree murder is not a de facto life sentence as a matter of law. Defendant attempts to place his sentence under Miller by aggregating his completed sentences from unrelated cases. And that should be rejected by this court. And the most obvious reason is the fact that even if defendants theory of aggregation is accepted, he still does not face a de facto life sentence. Unlike those cases in Peacock and Thornton, defendant's release date is concrete and not subject to any speculation. As detailed in the People's Brief, with good time credit, he has already received in those cases. When defendant is released on the murder, he will have actually received served 39 years, 39 years and eight months. That is not a de facto life sentence of more than 40 years. You know, defendant and defendant attempts to avoid this reality by arguing day for day credit cannot be revoked, can be revoked at any time. But this is not the case here. Defendant was given his day for day credit and discharge in those cases years ago. There's nothing to revoke. You went over very quickly, but the fact that you said discharged, those are discharged. And you can go to the IDEOC, I'm sorry. You can go to the IDEOC website and those cases are discharged, they're completed. There's the IDEOC no longer has jurisdiction over those cases, they're completed sentences. And at this point, they're just a near historical fact of this criminal background. Counselor, but you agreed that Mr. Bindig argues that IDEOC can actually revoke the good time credit and I don't want to do a gotcha thing with you. But the case of Armstrong versus Washington, it's an Illinois appellate court case found that IDEOC actually can revoke good time credit. And in that case, they actually did revoke the credit and they were affirmed in that case. I'm sure that in those cases, the defendant was not discharged in those sentences. That was the third district case that was decided on June 25, 1997. It is not, it's good law. Your Honor, I have not read that decision, but I'm sure in those cases, the defendant had not already been discharged on those particular sentences. Here, defendant has been discharged on those sentences and he's only serving the, you know, the murder sentence and his discharge date is concrete. And it'll be a 39 years. But I just want to make a point that Miller stated that it protected natural life without the possibility of parole. Right? Illinois has extended that to de facto life without possibility of parole. So it does not make any sense and is inconsistent with Miller cases not to consider the possibility of parole, the credit that the defendant can receive, especially in Illinois where it's structured. And the way that it's structured is automatic day for day, unless it's revoked. So it should be considered part of the argument. Based on your calculations, counsel, when, at what age will the defendant be released? And I know this is, that's a math question. If you're not able to tell me that I'll direct it to Mr. 57 years old. Before his original sentence of 50 years, he would have been released at the age of 74. In the current sentence of 33 years for murder, he'll be released at the age of 57. Well, the 33 years. That's also assuming that none of the good time credit that was previously earned is not revoked. Correct. Because if that's revoked, it could be 47 years. Right. And but again, again, under the it's de facto life without the possibility of parole. So, excuse me, I'm sorry, I'll let you finish though. But if he were to, I just want to make sure I understand this correctly. So if he were to have to serve the 47 years. How old would he be when he is released. I'm not sure of that day. Okay, I'll ask. I'm sorry, that's probably a question to ask him. It really doesn't. It's not going to be the 47. Because of what you said. He's been discharged. They can't go back. It's over. All those other sentences are done. And over. That's what it's the 33 years we are dealing with, and nothing else. And that's why you have a date certain the outside of it. He'll be 57 years. Yes, just just just Simon I agree the idea of see no longer has jurisdiction those cases are over this court doesn't have jurisdiction or those cases. And again, as I stated, at this point, they're merely a historical fact of his criminal background. So, additionally, aside from the fact that there is no de facto life sentence here, it's important to point out that that aggregation of these unrelated cases conflicts with people versus radius, which aggregated sentences, only after it was found that the was not a prerequisite to the aggregation of sentences for purposes of Miller, the court would not have made it part of its holding and defendant cannot say to one United States Supreme Court case or Illinois Supreme Court case that aggregates sentences for unrelated cases in his brief he cites to auto out of state cases but those aren't binding on this court, and moreover in every single one of those cases, the aggregated offenses were committed when the defendant was under 18, and therefore protected under Miller here committed the aggravated battery to a peace officer and the possession of a weapon in the penal institution when he was an adult. Thus if the aggregation of unrelated sentences is proper, the only sentence that should be aggregated is the armed robbery in which he received, which was committed when he was under 18 and received six years. And again, when you combine it with the murder sentence here is not a de facto life sentence. And the other obstacle in the aggregation of his other cases is the fact that when defendant was sentenced on the instant murder case all those other cases were completed and defendant cannot say to one case in any jurisdiction that allows a pending sentence to be aggregated with a sentence that has already been served by the time defending the sentence. So your honors there is no valid Miller issue here this in this case and the trial court was not required to make a finding of incorrigibility. Additionally, the trial court did not impose an excessive sentence, there's no dispute that the trial court comported with the statute governing adult sentencing of juvenile offenders, which sets out all the relevant sentencing factors, and the record affirmatively shows that the trial court considered all mitigating factors, including the defendant's youth at the time of the offense and his potential for rehabilitation, because the court reduced defendants original sentence of 50 years to 33 years. So you're actually out of time, but I'm going to allow you to finish up your thoughts so you can take a minute and go ahead and tell the court what you're trying to say now. Thank you, Your Honor, I completed my argument and we just asked this court, based on the arguments set forth in our brief and those stated today that this court affirmed defendants conviction and sentence for a first degree murder. Thank you very much, Mr. Mr. Just briefly, Your Honors, touch on a few things that the state just went over. I believe the state said in their argument regarding the motion for new trial that homes was an unreliable witness. That's an opposite to what strep testified at the hearing in 2017. He was an entirely consistent witness from jump from 2006 all the way through trial. He would have been an extremely powerful witness had that evidence come out during the trial. The state said that there's overwhelming evidence here. Of course, this court did not find that there was overwhelming evidence found that there was sufficient evidence on direct appeal, but it never stated that there was overwhelming evidence under a harmless error analysis. Regarding paragraph 35 I think the state linked Connors is a testimony as to having seen Gavin in the backseat, and that being corroborated by home saying that there was two people and the shooter getting into the car. However, I think that just proves our point as to the prejudice here, because had homes testified, and that information had been elicited either under direct in the case in chief, but the defense or under cross. This court would not have been able to say that homes corroborated Connors. In fact, it would have completely contradicted Connors, and that that instance. Turning to the sentencing argument here. I believe, Justice Walker, you were asking about what age. Mr. Gavin would be released at I cut out a little bit as to the specific of the question. I'm sorry. That's the question. Okay, just how old would he would be 57 if we're using 40. I'm sorry. There were two parts of the question was using the 33 and then using 47. If we're using the 33, he would be 50 because he was 17 when he was arrested in 2006. And if we're using the 47 at 64 should know for this court that now wasn't the majority holding and buffer, but this was a concern of justice and Burke at the time that the line would be 55 in that case. I should know for this court that people be Dorsey is supposedly hopefully going to decide this good time credit issue. It has been briefed. I believe the state's brief was filed two weeks ago, so it should be argued the March term. And regarding the excessive sentence here. If this court finds that it's not a de facto life sentence or the proportion of penalties clause was not met here. This court may still look at Gavin's youth and attendance circumstances and finding his sentence successive in the motion to cite additional authority people in McKinsey, the sixth division just reduced a 39 year term to 25 years. You realize just how different that case is from this one. All right. There was extensive mitigation in that case, but here there is there's also unbelievable mitigation in that case. There is a there is a large amount of mitigation in McKinsey. I'm not debating that whatsoever, Your Honor, but here we know that Gavin is not one of those individuals that's not capable for rehabilitation or Irretrievably deprived. I mean, we have this sentencing judge here saying, I think there is some hope for you to become a good citizen. And even though Noting the violent nature of the offense. The judge was heartened at the fact that you took your situation instead of doing bad acts in prison, other than the ones that you were done that were done prior to trial. You've done something in the penitentiary Couple that with His background is having a rough childhood with his before he was adopted by parents. It screams out that this was an excessive sentence here and I can't. I don't see that screaming. I mean, his adoptive parents are very helpful to him very supportive Yes, I have a question with going back just does Anything change if it say it is a fact that the DOC website says the other sentences are discharged. Does that change your argument. It doesn't, Your Honor, because if you look at that same website. It says his first degree murder conviction was discharges as well. It says that now that is in reference to the prior 50 year sentence, but that says it was discharging well so I don't think This is not the 33 year sentence is that this chair. Yes, correct. Yeah, but when reference to that. You know that those are different sentences. Just first trial. It was superseded by the 33 so the word discharged doesn't that have a significant effect on your argument. No, Your Honor. And because Because under Illinois law. We view consecutive sentences always as a single term. So it's this single term that needs to be done. It's not done yet. They're discharged. What does this mean, I mean, how could you say yeah so if he had a sentence at age 15 Of that was discharged and he commits something You're saying if he served a year, you got to add back all that even though it's discharged. This means it's done. It's over. Your Honor, this is a very peculiar case because of the timing of all the the convictions and Doesn't matter about that. It's a discharge is the word discharge is what makes this different that that's what I'm trying to find out from you. And I think what we always are concerned about is whether a juvenile is going to spend his life in prison. And if he's going to spend his He's not he's got he'll, it'll be almost a 40 year sentence and he'll be, I think you said 50 years old or 54 somewhere in there when he'd released at the outside. Well, I mean, depending on which number we're using. He's going to be 57 at a minimum. So, and we always have to be concerned if we're sentencing a juvenile to life in prison. That Miller was met and the factors and that a finding you don't need a specific biting. You don't need magic words, but That the sentencing court found the defendant irretrievably deprived and that's of course not what happened at the sentencing hearing here. We know that's the opposite of that. So whether this court. reverses under the motion for new trial remains for a new trial or in the alternative this court reduces Gavin sentence or man's the case for new sentencing hearing we asked for the relief requests in the briefs should the court have no further questions. And you are out of time. I just didn't interrupt because just as I was still asking questions and the justices have a right to continue asking questions for hours on so I didn't interrupt. But again, you are out of time. Thank you. We thank you both for your excellence and